**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**JACQUELINE S. DAVIS-O'BRIEN,**

    **Plaintiff,**

**vs.**                                               **CASE NO. 1:08CV33-MP/AK**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

    **Defendant.**

                                                  /

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**     **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on April 5, 2005, alleging a disability onset date of June 1, 1999 because of back pain, leg numbness, carpal tunnel syndrome, depression, and anxiety. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on April 4, 2007, and entered an unfavorable

decision on June 27, 2007. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

## B.     FINDINGS OF THE ALJ

The ALJ found that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, degenerative disc disease of the spine, and affective mood disorder, but that these impairments did not meet the listings. The ALJ found her capable of performing work at a light level with restrictions in climbing, balancing, stooping, kneeling, crawling and crouching, that she should never climb ladders, ropes or scaffolds, and she should avoid hazardous machinery. He found her only mildly limited in her ability to perform at a consistent pace. Although, he found her incapable of performing her past relevant work, he used a vocational expert to determine that there were a number of jobs in the national economy which she could perform

## C.     ISSUES PRESENTED

Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Lamadrid, in favor of the non-examining disability examiner; and the ALJ erred in not including Plaintiff's pain and depression in the hypothetical posed to the vocational expert.

The government responds that the substantial evidence supported the ALJ's findings, specifically the examinations of Dr. Chodosh, who found no impairment whatsoever in Plaintiff's hands, wrists, jaw or back; Dr. Adhami, who found that she had no decrease of strength in her wrists; and Dr. Greenberg, who found that she could perform most work-related activities not involving heavy lifting. The ALJ also noted that

**No. 1:08CV33-MP/AK**

Plaintiff received little ongoing treatment for any of her alleged physical or mental issues. Finally, the hypothetical question to the vocational expert included the findings of the ALJ and which are supported by the record as a whole.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to

the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

**No. 1:08CV33-MP/AK**

  4. Does the individual have any impairments which prevent past relevant work?

  5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.** **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff has a minimal work history.  (R. 106-107).  Although she reports 8 surgeries on her hands for carpal tunnel syndrome, there are no records of these surgeries or treatment for CTS.  (See 301-305, 318-319, 459).  She broke several vertebra in her back in a slip and fall injury in a grocery store, confirmed by MRI on 5/9/2001, (R. 431), but a more recent MRI on November 3, 2006, showed mild

**No. 1:08CV33-MP/AK**

degenerative changes and minimal disc narrowing. Her treatment consists of pain medication administered by the Health Department and Shands Healthcare which was discontinued or tapered after urine screens were positive for marijuana use and she had failed to comply with other requirements of a rehabilitation program through the SpineCenter at Shands. (R. 414-530, 551-588).

Treating physician Dr. Jesse Lipnick was familiar with Plaintiff in 1997 having treated her since 1995, and found her to be capable of light work, but her employment history was inconsistent despite her relatively good health. (R. 265-266). Other treatment notes from the health department and Shands do not assess her ability to work since she reported that she was "retired by medical reasons." (See R. 583, 585, 573, 567, 557, 553).

The consultative mental examinations by Drs. Shoenrock and Nazario in 2000 and 2005 respectively noted no significant mental limitations and a physical assessment by Dr. Greenberg in 2000 found her capable of "most work related activities," except no heavy lifting.

The only medical source to find marked and significant limitations is Dr. Lamadrid, who completed a functional assessment form on February 7, 2007, which is unaccompanied by any treatment notes.

## F.    **SUMMARY OF THE ADMINISTRATIVE HEARING**

Plaintiff was 53 years old at the time of the hearing and last worked in 1999. (R. 594). She hurt her back on February 14, 2000, when she slipped in a puddle of water at

**No. 1:08CV33-MP/AK**

degenerative changes and minimal disc narrowing. Her treatment consists of pain medication administered by the Health Department and Shands Healthcare which was discontinued or tapered after urine screens were positive for marijuana use and she had failed to comply with other requirements of a rehabilitation program through the SpineCenter at Shands. (R. 414-530, 551-588).

Treating physician Dr. Jesse Lipnick was familiar with Plaintiff in 1997 having treated her since 1995, and found her to be capable of light work, but her employment history was inconsistent despite her relatively good health. (R. 265-266). Other treatment notes from the health department and Shands do not assess her ability to work since she reported that she was "retired by medical reasons." (See R. 583, 585, 573, 567, 557, 553).

The consultative mental examinations by Drs. Shoenrock and Nazario in 2000 and 2005 respectively noted no significant mental limitations and a physical assessment by Dr. Greenberg in 2000 found her capable of "most work related activities," except no heavy lifting.

The only medical source to find marked and significant limitations is Dr. Lamadrid, who completed a functional assessment form on February 7, 2007, which is unaccompanied by any treatment notes.

## F.    **SUMMARY OF THE ADMINISTRATIVE HEARING**

Plaintiff was 53 years old at the time of the hearing and last worked in 1999. (R. 594). She hurt her back on February 14, 2000, when she slipped in a puddle of water at

**No. 1:08CV33-MP/AK**

Winn Dixie which is pending in litigation. (R. 598). Prior to that she settled a workers compensation suit in 1997 for the carpal tunnel syndrome for which she received $63,000.00. (R. 597, 604). She has constant burning pain as a result of the back injury. She uses a cane for balance, but she's been told to "wean" herself off of it, and she's been told to walk more, but it causes her to "seize up." (R. 602-603). Her wrists and hands hurt all the time, her right wrist feels broken, and her fingers stay numb. This causes problems in washing dishes, tying shoes, holding cups, writing and typing. (R. 606-607). She's had seven surgeries, four on her left hand, three on her right, with no relief, and she now seeks no treatment for it. (R. 608). She wears braces sometimes, which helps some. (R. 609).

She has anxiety attacks which send her into her bedroom where she prays. (R. 610). She also has depression, characterized by crying spells, usually twice a day, lasting about 30 minutes sometimes. (R. 611). She can pick up her grandchild, about 20 pounds, (R. 610), and also has TMJ causing her to lose most of the crowns in her mouth. (R. 611).

The vocational expert was posed a hypothetical which included occasionally lifting 20 pounds, frequently lifting 10 pounds, standing, walking, sitting six hours out of an eight hour day, with normal breaks, unlimited pushing and pulling, occasionally climbing ramps and stairs, never climbing ladders, ropes or scaffolds, occasionally balancing, stooping, kneeling, crawling, and crouching, avoiding hazardous machinery, and only mild restrictions in concentrating, persistence, pace, and social functioning.

**No. 1:08CV33-MP/AK**

The expert said she could not perform her past relevant work as a sandwich maker, but there were other jobs she could perform such as a room service clerk, cashier, or fast food worker. (R. 616-617). If she were restricted to sitting or standing four hours a day, and standing one hour, there would be no jobs she could perform. (R. 617-618). When asked about Dr. Lamidrid, she said she took the form into him at Marion County Health Department, and she saw him twice, she thought. (R. 618).

### G.  DISCUSSION

#### a)  Treating physician's opinion

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440

(11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).

A treating physician is defined as a "medical source who provides [the claimant] or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 CFR §404.1502.

20 CFR §§ 404.1527(d)(2)(I), 416.927(d)(2)(I) provides: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source."

Although the Plaintiff identified Dr. Lamadrid at the hearing as a doctor at the Marion County Health Department, there are no treatment notes from this facility in the record. She claims that she saw him twice, but even if he were considered a treating physician, his opinion does not warrant great weight when unaccompanied by treatment notes or clinic findings. Consequently, there is no merit to this ground.

    b)    <u>Defective hypothetical</u>

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical

**No. 1:08CV33-MP/AK**

Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. Id., at 1240. In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ is only required to pose those limitations he finds *severe* in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

Plaintiff describes extreme limitations resulting from her chronic pain, including daily activities consumed by attempts at pain relief (ice packs, hot tub, rest, repositioning), and the use of a cane and bilateral wrist splints. (R. 188-190, 228, 233, 234). Despite such severe restrictions in her daily activities and alleged chronic, unrelenting pain, the medical record does not show a consistent source of treatment for her back beyond medication, which was tapered off by one medical source because illegal drugs were noted in her urine screen. While she obviously broke some discs several years ago, the most current MRI shows only mild degenerative changes and disc space narrowing. She admits at the hearing that she seeks no treatment for her hands. Likewise, with anxiety and depression, according to her so severe that she must hide in her bedroom and bathroom with daily attacks, she seeks no mental health treatment, has had no counseling, nor receives medication from a mental health

**No. 1:08CV33-MP/AK**

treatment source. The ALJ properly noted these inconsistencies in Plaintiff's own reported limitations and the medical record as a whole, and is support for his finding that she was not entirely credible. Thus, the ALJ properly included in his hypothetical to the vocational expert only those limitations and functional assessments made by treating sources and non-examining physicians, not those based on her subjective complaints.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED.**

At Gainesville, Florida, this 10th day of August, 2009.


S/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:08CV33-MP/AK**